### TAYLOR *vs.* TILLOTSON.

Where a contract is entered into for the sale of a chattel, the price paid, and the article delivered to the purchaser, with the right to return it to the vendor within a stipulated time, provided the purchaser does not in any way injure it while in his possession, and the property is returned to the vendor, who accepts it and repays the price—an action lies against the purchaser, if he has been guilty of a *misrepresentation* or *fraudulent concealment* in respect to an injury done to the property while in his possession.

To subject the purchaser to an action in such case, it is not necessary to show that the injury was *intentional* or was occasioned by *gross negligence.*

*It seems* that the *title* to the property is vested in the purchaser *during the time* in which the option to return may be exercised, subject to be divested by its return; and that *during such time* it is at the risk of the purchaser as well in respect to a *partial injury* as to a *total loss* or *destruction.*

ERROR from the supreme court. Taylor entered into a contract with Tillotson for the purchase of a horse, the terms of which were set forth in a writing in these words; " Received of E. Taylor ninety dollars for a six year old sorrel horse. Taylor is to have him pricked by H. C. Platner at my risk and at his expense, and he has three weeks from this day to return the horse to my house if he does not like him, *provided he does not in any way injure the horse;* if he is returned as above, I hereby promise to pay back to Taylor the ninety dollars." A few days after the date of this contract, Taylor drove the horse in a one horse waggon, and in descending a hill, the horse ran away. The waggon was upset, and Taylor and his wife were thrown out and badly injured. Taylor applied to Tillotson to take back the horse, who took him back and repaid Taylor the ninety dollars. A month afterwards Tillotson commenced a suit against Taylor in a justice's court, and declared against him in *case* for a *misrepresentation* or *concealment* in relation to the misadventure. Taylor pleaded the general issue. The justice rendered judgment in favor of the plaintiff for forty-five dollars damages. The defendant *appealed* to the Otsego common pleas, where the cause was tried on the pleadings in the court below. On the trial of

the cause it was proved that at the time when the plaintiff agreed to take back the horse, the defendant, in giving an account of the misadventure, stated that, in going down a hill, and passing a water-course, one of the traces got loose, and the fills fell down; that he turned the horse out of the road to prevent the waggon running upon him, that the waggon then turned over, and he and his wife were thrown out; that the horse did not run, that he walked or trotted about five rods, and was in no way frightened or injured. The plaintiff said he would take the horse back if he was as good as he was before, but if he was not as good, the defendant must make him as good—to which the defendant answered that if what he had told him was not true, he might have both the horse and the ninety dollars. The plaintiff proved that the defendant had stated that the cause of the accident was that the whiffletree gave way, and let the waggon on to the horse's heels, who then ran away down the hill, where the waggon was upset, and the horse then turned round and ran up the hill twenty or thirty rods, where he stopped of his own accord. It was proved that, previous to the time of the contract, the horse was gentle, and that since the accident he was restive, easily frightened, and showed a disposition to run away; and the plaintiff also proved that the fact of a horse having once run away, materially lessened his value in market. The plaintiff having rested, the defendant applied for a *nonsuit* on the grounds, 1. That this was a case of *bailment* in which there could be no recovery against the defendant unless *negligence* on his part was shown; 2. That if not a bailment, it was a *conditional sale*, and in such case the plaintiff cannot recover without showing negligence on the part of the defendant; 3. That the plaintiff cannot recover on the agreement that the plaintiff might keep both the horse and the money if what the defendant told him was not true, as it was a *nudum pactum.* The nonsuit was refused, the court ruling that if the jury believed that the contract was varied in the terms on which the horse was taken back, and that the defendant was guilty of fraud to induce the plaintiff to vary the contract, that then the defendant was liable, and in such case it was im-

material what was the original contract. The defendant excepted to this decision, and called a witness, who proved that the waggon and harness used at the time of the accident were substantial and good, and had not been much used. He also called various witnesses, who gave it as their opinion that the circumstance of a horse having once run away, would not materially detract from his value. Several witnesses on the other side testified that it would materially affect his value. The evidence being closed, the presiding judge charged the jury, that if they believed from the evidence given that the parties had varied the terms upon which the horse was to be taken back, and that the defendant had wilfully misrepresented the facts or fraudulently suppressed the truth, the plaintiff was entitled to recover ; but if they should find that the terms of the contract had not been varied, it would become material to inquire into the meaning of the words of the contract " provided he does not in any way injure the horse ;" that a majority of the court were of opinion that those words included any injury happening to the horse while the defendant was using him, but that a minority of the court were of opinion that the defendant was answerable only for negligence or wilful injury. He further instructed the jury, that it was their duty to inquire whether the defendant had wilfully misrepresented the facts, or fraudulently concealed the truth; if they should find that the defendant had been guilty of fraud, they must then inquire whether the plaintiff had sustained any damage, and assess the same accordingly, and if they were satisfied that a fraud had been perpetrated, they were at liberty, in their verdict, to go beyond the amount of the actual damages. The defendant excepted to the charge. The jury found a verdict for forty dollars, on which judgment was rendered. The defendant removed the record by *writ of error* into the supreme court, where the judgment of the common pleas was *affirmed*. Whereupon the defendant sued out a writ of error, removing the record into this court.

The following opinion was delivered in the supreme court on affirming the judgment of the common pleas :

*By the Court,* NELSON, J. The charge of the court below, we think, was unobjectionable. The only point about which there can be any question, is as to the true construction of the agreement between the parties, in respect to the sale of the horse. The title undoubtedly passed to the defendant. The consideration was paid, and the horse delivered. There was, therefore, nothing like a bailment in the case. If the horse had died from any cause before the return, he would have died the defendant's. The language of the agreement is very explicit: " he (defendant) has three weeks from this day to return him, provided he does not in any way injure the horse; if he is returned as above, I hereby promise to pay back the money." The horse was to be returned as a condition precedent to the rescindment of the contract, and without this there could be no pretence for a return of the consideration money. This of itself is repugnant to the idea of a bailment, and that the defendant was accountable only for reasonable tatention and care of the property while in his possession; for assuming the case to be a bailment, then the plaintiff must risk the life of the animal, unless there was negligence. What seems conclusive as to the intent of the parties, is the stipulation that the defendant should get the horse pricked at the risk of the plaintiff. Why limit in express terms the risk to this act, if it was designed by the contract to apply to the use of the horse generally? Nothing would have been more natural, while the subject of risk was under consideration, as to this particular, than to have extended it to the use of the horse generally, if so intended by the parties. Besides, the terms of the contract are too explicit and decisive to justify the construction that the plaintiff was to be responsible for all the accidents to which the horse might be exposed while in the hands of the defendant, and accord with the idea of an absolute sale. This conclusion is also in conformity to the understanding of the parties themselves, as is obvious from the conversation at the time the horse was returned. Assuming this construction of the agreement to be correct, there can be no doubt the defendant would be liable in this

form of action ; if by false representations he had induced the plaintiff ·to take back the horse, when in fact he had been seriously injured while in his hands, it would be fraud accompanied with damage. This was a question of fact ; and the verdict of the jury is conclusive upon it, where the evidence may reasonably sustain it ; and, in this view of the case, we perceive no objection to the nature of the testimony received to establish the existence and amount of the damage. Judgment affirmed.

The cause was argued in this court by

*M. T. Reynolds,* for the plaintiff in error.

*S. Beardsley,* (attorney-general,) for the defendant in error.

*Points submitted on the part of the plaintiff in error :*

I. The *declaration* was wholly defective: it does not allege that the *representations* made by the defendant were *false* in fact, or that they were made with the intent to deceive, or that they produced that effect ; and there is no *scienter* charged.

II. The horse, while in Taylor's possession, was entirely at the risk of Tillotson, and Taylor was responsible only for damages, arising from his own negligence.  1. It was a case of *bailment.*  2 Black. Comm. 451.  Jones on Bailment, 117. 2 Kent's Comm. 559.  Story on Bailments, 24, 25.  2. The sale was conditional and not absolute, and the property remained in Tillotson, and at his risk.  3 Johns. R. 170.  2 Kent's Comm. 497.  2 Saund. on Pl. & Ev. 539.  Comyn on Cont. 48, 134.  6 Cowen, 250.  7 id. 85.  6 Wendell, 80, 103.  7 id. 404.  8 id. 247.  2 Paige, 163.  1 id. 315. 2 Selw. N. P. 520.  15 Johns. R. 349.  4 Wheaton, 228. *Towers* v. *Barrett,* 1 T. R. 133, reviewed and sanctioned in *Thornton* v. *Wynn,* 12 Wheaton, 133.  2 Johns. Cas. 253. 1 Bell's Comm. 236 and n. 4.  Ross on Vendors, 61 to 65.

III. If Tillotson ever had a right to action, he lost it by voluntarily taking back the property with a full knowledge of all the facts.

IV. The decisions of the common pleas and the charge to the jury were erroneous.

*Points submitted on the part of the defendant in error :*

I. No objection having been taken to the declaration in the court below by demurrer, or motion in arrest, it cannot now be raised.

II. The transaction in this case was not a *bailment;* it was a *sale*, and as it respected Tillotson an absolute sale. The horse, while in Taylor's possession, was not subject to Tillotson's debts.

III. The right of Taylor to return the horse depended upon the condition that he had not injured him. Whether he had injured the horse was submitted to the jury, and their finding is conclusive.

IV. The exception to the charge being general, is unavailable, if any portion of it is correct.

By the CHANCELLOR. The declaration in the original suit in this case before the justice was certainly very imperfect; and if the action had originated in a court of record, I think it must have been considered fatally defective on a general demurrer, or upon a motion in arrest of judgment, particularly as it did not allege that the horse was injured or rendered less valuable in consequence of his fright and running away, or that the defendant was aware that those circumstances would injure the horse or render him less valuable to the owner than he was before. The action was for a deceit in inducing the plaintiff to take back the horse and refund the purchase money, by a misrepresentation or fraudulent concealment of the fact that the horse had been injured and rendered less valuable in consequence of his having been frightened and running away with the waggon. It was necessary, therefore, that the plaintiff should allege and prove that the horse would be thus injured by the fright and running away, and that the defendant knew it would have that effect. For if the defendant was not aware of

the fact that what had occurred in consequence of the accident would injure the horse, there could not have been any fraudulent concealment in the case. But as pleadings in justices' courts are always informal, and will seldom bear the test of legal scrutiny; as there is no doubt that the parties went to trial, especially in the common pleas upon the appeal, with a sufficient knowledge of what was the real subject of controversy in the suit, and as there was no motion in arrest of judgment from any thing that appears in the case, I am disposed to pass over the defects in the declaration, and examine the question in controversy upon its merits.

I cannot concur with the counsel for the plaintiff in error that under such an agreement for a conditional sale as was made in this case, the horse was at the risk of the vendor during the period allowed to Taylor to return him if he did not suit, and receive back his money. It was not a case of bailment merely; for by the conditional sale and delivery of the horse to the purchaser, and the payment of the purchase money, the title of the property *for the time* was completely vested in the purchaser, subject to be divested, however, by the exercise of his right of election at the end of the prescribed period to return the horse and to receive back the purchase money. In this respect the case is materially different from that of *De Fonclear* v. *Shottenkirk*, 3 Johns. Rep. 170, to which we are referred by the counsel for the plaintiff in error upon the argument. In that case there was a mere negotiation for a sale, or at most a sale upon a suspensive condition; so that the bargain itself was not complete, as the purchaser had not paid or agreed to pay any particular amount of purchase money. Although the price was named by De Fonclear, the time and manner of payment was not definitely fixed upon; and Shottenkirk had not absolutely agreed to pay the price asked, if the slave was not returned at the end of any prescribed period. He merely took him upon trial, to see if the negro would be satisfied to remain with him as his master if he thought fit to complete the bargain for his purchase. It was therefore a case in which either party might have

resiled from the contract or broken off the negotiation at any time before Shottenkirk had agreed to accept the offer of De Fonclear to sell for the price specified. The contract in the present case was one which is very uncommon here, inasmuch as the purchase money was actually paid at the time the horse was received on trial. It was, therefore, what in the civil law is called a sale upon a condition dissolutory ; or more properly what, in the Mussulman law, is termed *a condition of option ;* that is, a sale which is complete and binding upon one party immediately, but with a stipulation as to the other that he shall have the option of adhering to the contract, or 'of rescinding the sale and annulling the contract within a certain specified time, and receiving or paying back the purchase money. It does not very satisfactorily appear what the rule of the civil law is upon the question as to who shall bear the loss of an injury happening to the property which is the subject of such a sale, without the fault of either party, during the time prescribed by the condition of option ; and I have not been able to find any reported case, either in this country or in England, where this question has arisen and been settled. *Domat* says, if a thing is sold upon trial for a certain time on condition that it shall be no sale if it does not please the buyer, all the charges and the profit and loss which happen before or during the time of trial, the sale not being as yet accomplished, accrue to the seller, who is still the master. Domat, B. 1. tit. 2. § 7. art. 6. This language is general, and would seem to apply to cases of dissolutory as well as to suspensive conditions ; although it is inconsistent with the general rule of the civil law that when the bargain is complete, by the payment or security of the purchase money, the property is at the risk of the purchaser, whether it has or has not been delivered. But in the Spanish *Partidas,* which are founded upon the general principles of the civil law, it is said that where a condition is annexed to the sale, and the thing sold is *deteriorated* or *ameliorated* before the happening of the condition, the loss or profit will be on account of the buyer ; and if the thing is *lost* or *wholly destroyed,* in whatever way it may happen, the loss will be on

ALBANY,
Dec. 1836.

Taylor
v.
Tillotson.

account of the seller. In the Napoleon code, although a great variety of cases are provided for, I find no principle laid down which appears to reach the one now under consideration. Neither does the question appear to have been settled by the law of Scotland ; although the principle that dissolving conditions are merely personal, and do not prevent the passing of the title, so as to render the sale absolute if the property has passed into the hands of third parties, or is attached by creditors, seems to be wholly inconsistent with the idea that the property remains at the risk of the vendor during the time prescribed in the condition of option. See 1 Bell's Comm. 239. By adverting, however, to the writings of a learned *Sheikh*, who compiled the extensive and valuable treatise on the *Mussulman laws*, called *Al Hedaya*, or the Guide, more than six hundred years since, we find a principle laid down which is directly applicable to the case under consideration ; a stipulation of a condition of option on the part of the purchaser being common in sales in *Mahommedan* countries, being founded upon the advice of the Prophet himself to one of his companions and disciples who had frequently been taken in by purchasing without first seeing or trying the property purchased. The principle of the Mussulman law, as laid down by this learned commentator is, that if the condition of option is stipulated on the part of the purchaser, and the property is injured, he is not permitted to return it, but must bear the loss, as the option is thereby determined ; which is also the case where the property is wholly lost or destroyed. See 2 Hamilton's Hedaya, B. 16. ch. 2. p. 384. Although this rule is found among the laws of semi-barbarians, it is one which is perfectly equitable and proper when applied to a case like the present, where there is an actual change of the possession of the property, in consequence of the conditional sale, and the purchase money has been paid or received. As the property which is the subject of the sale, is, for the time at least, the property of the purchaser, and subject to his absolute disposition and control ; as it depends upon his own volition whether it shall continue to be his, and as he is entitled to retain it, and thus secure to himself

the benefit of any increase in its value, as well as that which may be derived from its use in the mean time, it certainly must be right in principle that he should bear the loss, if any occurs while the contract of sale still continues in full force as against the vendor, where the parties have made no agreement as to who shall sustain such loss.

In this case also the injury, if any, may be said to be in some measure attributable to the defendant himself, as he, if any one, was in fault, in using the horse before a wagon to which the whiffletree was not properly secured, so as to guard against such an accident. For as I understand the testimony, the accident was not owing to any vice of the horse, but to the giving away of something about the wagon or harness, by which the horse became frightened ; and if there was any fault or want of care on the part of Taylor, the rule of the civil law is explicit that he alone is answerable for the loss. 1 Domat, B. 1. tit. 2. § 7. art. 11.

Another well settled principle of the civil law is, that if there is any agreement of the parties as to injuries which may occur during the time fixed by the suspensive condition of option, the parties must be bound by that agreement, whatever their rights would have been if no such agreement had been made. 1 Domat, B. 1. tit. 2. § 7. art. 13. In this case there was an agreement that the purchaser should not injure the horse during the time of trial, and the vendor agreed to run any risk arising from the nicking ; and I am inclined to think that such an injury as is complained of in this case would be such an one as was provided for by this agreement. The parties certainly could not have contemplated an intentional injury done to the horse, although such an one was covered by the terms of the agreement, Neither can I believe they intended to confine their agreement to an injury arising from gross carelessness. Upon the whole I am satisfied that Tillotson was not bound to take back the horse, if he was actually injured while in the hands of Taylor so as materially to diminish his value ; and there is no evidence in the case that he took him back with a full knowledge of all the facts of the case, as those facts were detailed by the witnesses on the trial.

Whether there was such an injury to the horse as materially to diminish his value, was a question of fact proper for the jury. The question whether the defendant had induced the plaintiff to take the horse back by an intentional misrepresentation or concealment of the real circumstances of the case, was also a question of fact. And although upon this evidence I should probably have come to a different conclusion, both as to the alleged fraud, and as to the extent of the injury which the plaintiff had sustained, from what the jury did, I am not prepared to say there was not sufficient evidence in the case to make it the duty of the court to submit the questions of fact to the jury for their decision thereon. I must therefore vote to affirm the judgment of the supreme court.

*Senator* EDWARDS also delivered an opinion in favor of an affirmance of the judgment of the supreme court.

On the question being put, *Shall this judgment be reversed?* all the members of the court, with the exception of two (twenty-one being present) voted in the negative.

Whereupon the judgment of the supreme court was AFFIRMED.