GEORGE W. CARTER, RESPONDENT, *v.* JOSEPH W. WALLACE, APPELLANT.

*Sale at option of vendee — when the title remains in the vendor until the vendee has exercised his option.*

On March tenth the plaintiff and defendant entered into an agreement whereby the latter was to take and use a mare belonging to the plaintiff, and if she drove to suit him he was to keep her and pay therefor the sum of $130. In pursuance of this agreement the plaintiff delivered the mare to the defendant,

who on that day drove her a distance of some twenty-one miles and then placed her in his own barn. The next morning he discovered that she was sick and went to the plaintiff's house, told him of her sickness, and asked the plaintiff to come and see her. The plaintiff being himself sick asked the defendant to bring the mare to his house, saying he would do what he could for her. The defendant brought the, mare to the plaintiff's house and left her there. She died that afternoon.

*Held,* that the title had not passed to the defendant, and that he was not bound to pay the purchase-price to the plaintiff.

APPEAL from a judgment of the Steuben County Court, in favor of the plaintiff, entered upon the report of a referee.

*Eli Saule,* for the appellant.

*Burrell & Robinson,* for the respondent.

LEWIS, J. :

This action is to recover the sum of $130, as the agreed price of a mare, alleged to have been sold and delivered to the defendant by plaintiff. The answer sets up that she was delivered to defendant under an arrangement that defendant should take her on trial, and if he found her right, and he was suited with her, he would purchase her of plaintiff; that she did not suit him, and that he returned her to plaintiff.

The referee found as facts : First. That "about the 10th of March, 1880, the plaintiff was the owner and in possession of one horse ; and, on the day last aforesaid, plaintiff and defendant made and entered into an agreement, whereby the defendant was to take and use the mare, and if she drove to suit him he was to keep her, and pay the plaintiff therefor the sum of $130. Second. That under and in pursuance of the aforesaid agreement, the plaintiff delivered the mare to the defendant, who, on the same day, drove her to Canisteo and back, a distance going and returning of four miles, and also, on the same day, drove her to Hornellsville and back, a distance going and returning of seventeen miles. Third. The defendant did not return the mare to the plaintiff on that day, but, when he returned from Canisteo, put her in his own barn, where she remained until the next morning, when he discovered she was sick, whereupon he went to the plaintiff's house and informed him that the mare was sick, describing her symp-

toms to him, and requested the plaintiff, who sometimes practiced as a farrier, to come to his house and see the mare. Plaintiff being sick, he requested the defendant to bring her to his house, saying that he would see what he could do for her. Fourth. That the defendant, in pursuance of such request, brought her to the house of the plaintiff, who treated her until she died, on the afternoon of the same day. Fifth. At the time of the delivery of the mare by the defendant to the plaintiff, he did not give the plaintiff any notice that the mare did not drive to suit him, or that he intended to terminate the arrangement for the purchase of the mare. The defendant had expressed himself to others as well pleased with the mare, and that she drove to suit him. Sixth. I find that the delivery of the mare by the defendant to the plaintiff was for the purpose of having the plaintiff treat her as a farrier only; that no notice was given by the defendant to the plaintiff that the arrangement for the purchase of said mare was terminated, and the same was not terminated, but in full force at the time of the death of the said mare. I find, as a conclusion of law, that the plaintiff is entitled to recover of the defendant the sum of $141.76."

The referee's findings of fact are supported by the evidence; and if his legal conclusion is sound, the judgment should be affirmed. But had the title to the mare vested in the defendant? He had the option to become the owner; if she did not suit him to return her; and the referee finds that the option was still existing at the time she was taken sick and returned to the plaintiff. No claim is made in this action for damages arising out of any negligence of the defendant in the use of the animal. The evidence does not warrant that conclusion; neither has the referee found that the defendant consented to buy *in præsenti*. No time was mentioned within which he was to determine whether he would take title and pay for the animal. It was a mere bailment, and not a sale. The case of *Hunt* v. *Wyman* (100 Mass. R., 198), is in point. That was a contract for the sale of a horse; the price was agreed upon; the purchaser took possession to try the animal, and if it did not suit he was to return it in as good condition as when received, the night of the day he took it, to which the plaintiff assented. Before reaching defendant's home, the horse was injured, so that he could not

be returned. It was held it was an option to purchase if he liked it, and that he was not liable for the price.

The case of *Elphick* v. *Barnes*, reported in the Common Pleas Division of the Law Reports (vol. 5, p. 321), is, in its facts, very similar to the case of *Hunt* v. *Wyman* (*supra*). That was the sale of a horse, with the right to the purchaser to take it on trial for eight days, the price being agreed upon. Before the expiration of the eight days the horse died. It was held that the purchaser was not liable for the price of the horse. Judge DENMAN says : " There is no sale until the approval is given either expressly or by implication, resulting from keeping the goods beyond the time allowed for trial. Here, I think, there was no sale at the time of the horse's death, which happened without the fault of either party, and therefore that the action for goods sold and delivered must fail."

The case of *Stone* v. *Browning* (51 N. Y., 211) is instructive upon the question involved in this case. " In order to constitute a valid contract, there must be a mutual assent, one intended to bind both parties. They must also co-exist at the same moment of time." (Benjamin on Sales, § 39.) The cases referred to in respondent's brief are not in point. *Taylor* v. *Tillotson* (16 Wend., 494) was a contract for the sale of a horse ; the price was paid, the horse delivered to the purchaser with the right to return it to the vendor within the stipulated time, provided the purchaser did not injure it. If he returned as above, the purchase-price was to be refunded. While trying the horse he was injured. He was returned to the vendor and the purchase-price refunded, the defendant not informing the vendor of the injury. An action was brought by the vendor in case, for the misrepresentation or concealment in relation to the misadventure. It was held that he could recover. It is clear that the title to the horse passed to the purchaser in that case, and he was at his risk.

In *Bradley* v. *Wheeler* (44 N. Y., 495) the contract was to sell a quantity of hay. The minds of the parties met as to terms and place of delivery. It was taken by the vendor in a scow alongside of defendant's schooner, and defendant took charge of it, and a portion of it was transferred to defendant's schooner. Fire broke out near by and destroyed the hay. It was held that the title passed to the purchaser.

The question to be determined is, what is the intention of the parties as to the passing of title. The defendant in this case had not paid the purchase-price, he had not notified the plaintiff that he had concluded to retain the mare, but before having come to a determination, without any fault of his, the animal was taken sick and died. We do not think that the minds of the parties ever met upon a contract of sale *in præsenti*, and hence the title to the mare was, at the time of her death, in the plaintiff, and the defendant was not liable in an action for property sold and delivered.

The judgment should be reversed and new trial granted, with costs to abide the event.

BARKER and HAIGHT, JJ., concurred; BRADLEY, J., not sitting.

Judgment of the County Court reversed, and a new trial ordered before another referee, with costs to abide the event.